# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RUTH WHITEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-975-D |
| | ) |
| STATE FARM FIRE AND | ) |
| CASUALTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Ruth Whiteman was insured under a homeowners insurance policy issued by Defendant State Farm Fire and Casualty Company. She contends Defendant, among other things, breached the implied covenant of good faith and fair dealing by failing to perform an adequate investigation of her claim of earthquake damage to her home. Before the Court is Defendant's Motion for Partial Summary Judgment [Doc. No. 32]. Defendant's motion seeks judgment as a matter of law only as to Plaintiff's claims for bad faith and punitive damages. Plaintiff has filed her response in opposition [Doc. No. 45] and Defendant has replied [Doc. No. 48]. The matter is fully briefed and at issue.

## UNDISPUTED MATERIAL FACTS

There is no genuine dispute as to the following facts except where noted. Plaintiff was insured under a homeowner's insurance policy, Policy No. 36-CT-

1420-0 (the "Policy"), which was issued by Defendant. Section I of the Policy ("Losses Insured") initially provided coverage for "accidental direct physical loss" to the property, which included, but was not limited to, fire, lightning, windstorms, and hail. Under the heading, "Losses Not Insured," the Policy stated Defendant would *not* provide coverage for damage caused by, *inter alia*, "settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceiling," and "earth movement," which the Policy defined as "the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not …." The Policy interpreted "earth movement" to include events such as "earthquake[s] [and] erosion or movement resulting from improper compaction, site selection or any other external forces." Other losses not covered by the Policy included defects in construction and/or design, and weather conditions. In 2010, Plaintiff added an Earthquake Endorsement to the Policy, which amended Section I to read, in part:

> SECTION I - LOSSES NOT INSURED references to earthquake and volcanic explosion are deleted. Such insurance as is afforded by Section I of the policy is extended to insure for accidental direct physical loss caused by earthquake or volcanic explosion.

On September 11, 2015, Plaintiff contacted Defendant stating that her property had suffered damage from an earthquake that happened on September 10, 2015. Plaintiff stated she was at home when the earthquake occurred and she felt and heard the floor "pop." Defendant's representative Scott Bagwell, checked with the

U.S. Geological Survey (USGS) and confirmed an earthquake had occurred that day ten to fifteen miles from Plaintiff's home that registered 2.9 on the Richter Scale. Bagwell also interviewed Plaintiff, who reported she had sustained cracks throughout her home. Notes taken by another representative, Matt McLemore, stated that he performed the following acts on September 15, 2015:

- Called and spoke with [Plaintiff] this afternoon.
- Confirmed the estimated DOL [date of loss] and location.
- Completed EQ [Earthquake] Q &A (will place in the file and send to engineer).
- Explained covered versus non-covered damage and use of engineer.
- Explained the 2% EQ deductible ($94,900 x 2% = $1,898 deductible)
- Advised RoR [Reservation of Rights] letter will be sent out within the next couple of days and what it means.
- Advised engineer will contact her directly to schedule appointment and then let me know; if available, I will come out at the same time. If not, we can make other arrangements later.
- Provided [Plaintiff] the toll free number, my extension, and my name.
- I asked if [Plaintiff] had any questions, no. Advised to call me if she has any questions later and/or needs additional information, understood.

See Def. Mot. for Summ. J. at Ex. 5 (paraphrasing added). McLemore next obtained the name of PT&C LWG Forensic Consulting using State Farm's pre-identified list of engineering firms, and on September 17, 2017, McLemore spoke with a representative of PT&C and sent Plaintiff a Reservation of Rights letter. He then retained Registered Professional Engineer Corbin Swain to inspect Plaintiff's home.

Swain examined Plaintiff's home and concluded that the damage to Plaintiff's home had not been caused by an earthquake, but was instead caused by "differential foundation movement." He also concluded that "[t]he cracking of the interior finishes and concrete slab of the subject residence was caused by non-uniform movement of the soils supporting the foundation and subsequent differential foundation movement. The non-uniform movement of the supporting soils was the result of natural soil consolidation and variation in the moisture content of the soils underlying the foundation." McLemore called Plaintiff to go over engineer findings and repair recommendations. Plaintiff made it clear that she disagreed with the conclusions.

McLemore followed up the conversation with a letter to Plaintiff, explaining that Defendant was denying her claim based on Swain's report. McLemore cited several policy provisions Defendant believed excluded coverage, specifically the aforementioned exclusions for "settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceiling"; "earth movement"; construction/design defects; and weather conditions. On October 30, 2015, pursuant to her request, McLemore sent Plaintiff color photos from the engineer's report, a copy of her Policy, and closed the claim. Plaintiff then filed this action.

The parties' dispute centers around the adequacy of Swain's inspection. Plaintiff contends Swain failed to perform necessary tasks in order to perform a

4

reasonable investigation in that he: (1) failed to inspect crucial areas where damage could be found in Plaintiff's home, such as the attic and front crawl space; (2) failed to measure the moisture of the soil, although he suggested denying Plaintiff's claim on the basis that excess moisture in the soil caused the soil beneath to shift; (3) did not see any evidence of "ponding" around Plaintiff's home, despite concluding that excess moisture contributed to the damage;[1] (4) failed to take a soil sample from beneath the home, although he asserted that damage to the home was caused by the type of soil underneath; (5) failed to inspect/investigate how Plaintiff's home was built, although its damage had also been attributed to poor workmanship or soil compaction; (6) failed to properly investigate the home for exterior damage; (7) failed to inspect whether or not there was rainfall in the area, although he testified that damage to the home could have been caused by moisture in the soil due to extra rainfall; and (8) failed to consider the effects of several moderate size earthquakes on the home's foundation and supporting soil.

Defendant states Plaintiff's allegations provide neither evidence of any applicable investigatory standards that Swain failed to meet nor proof that Swain's investigation was a sham. Rather, Defendant contends that there can be no question

---

[1] "Ponding" refers to the (typically unwanted) pooling of water on a surface, usually on a flat roof or roadway.

that its actions were reasonable under the circumstances, and it is therefore entitled to judgment as a matter of law.

## STANDARD OF DECISION

Rule 56(a), Federal Rules of Civil Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court views the material undisputed facts in the light most favorable to the non-moving party. *T.D. v. Patton*, 868 F.3d 1209, 1219 (10th Cir. 2017). The Court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter asserted, but to determine whether there is a genuine issue for trial. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).[2] An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id*.

Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine

---

[2] Stated another way, "[t]he standard for summary judgment is not whether a plaintiff would prevail at trial, but whether the Defendant has proven that no issues of material dispute exist." *Werkheiser v. Pocono Township*, No. 16-cv-15, 2018 WL 509814, at *3 (M.D. Pa. Jan. 23, 2018).

factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004). Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007).

## DISCUSSION

Under Oklahoma law, which the parties agree controls this case,[3] "'[e]very contract ... contains an implied duty of good faith and fair dealing.'" *Combs v. Shelter Mutual Ins. Co.*, 551 F.3d 991, 998-99 (10th Cir. 2008) (quoting *Wathor v. Mutual Assurance Administrators, Inc.*, 2004 OK 2, ¶ 5, 87 P.3d 559, 561). "An insurer has an 'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 26, 121 P.3d 1080, 1093 (citing *Christian v. American Home Assurance Co.*, 1977 OK 141, ¶ 8, 577 P.2d 899, 901). "Under Oklahoma law, 'the essence of the intentional tort of bad faith with regard to the insurance industry is

---

[3] Subject matter jurisdiction here is predicated upon diversity of citizenship. *See* Notice of Removal ¶ 7 [Doc. No. 1]. A federal court sitting in diversity applies the substantive law of the forum state. *Ace American Ins. Co. v. Dish Network, LLC*, 883 F.3d 881, 887 (10th Cir. 2018).

7

the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.'" *Boggs v. Great Northern Ins. Co.*, 659 F. Supp. 2d 1199, 1216 (N.D. Okla. 2009) (quoting *McCorkle v. Great Atlantic Ins. Co.*, 1981 OK 128, ¶ 21, 637 P.2d 583, 587).[4]

"[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *Badillo*, 121 P.3d at 1093 (quoting *McCorkle*, 637 P.2d at 587). "A central issue in any analysis to determine whether breach has occurred is gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing." *Id.* (citing *Buzzard v. McDanel*, 1987 OK 28, ¶ 10, 736 P.2d 157, 159).

In sum, to prevail on her bad faith claim, Plaintiff must show: (1) Defendant was required under the Policy to pay her claim; (2) Defendant's refusal to pay the claim was unreasonable under the circumstances because it either (a) did not perform a proper investigation, (b) did not evaluate the results of the investigation properly,

---

[4] "Bad faith," for purposes of the tort, has been described as "willful, malicious, or oppressive for the purposes of delaying or avoiding payment of the insured's claim." *Tolman v. Reassure America Life Ins. Co.*, 2017 OK CIV APP 15, ¶ 15, 391 P.3d 120, 123 (citing *Christian*, 577 P.2d at 905).

or (c) had no reasonable basis for the refusal; (3) Defendant did not deal fairly and in good faith with Plaintiff; and (4) Defendant's violation of its duty of good faith and fair dealing was the direct cause of the damages sustained by Plaintiff. *Bannister v. State Farm Mut. Auto Ins. Co.*, 692 F.3d 1117, 1126-27 (10th Cir. 2012); *Badillo*, 121 P.3d at 1093.

The applicable standard governing Plaintiff's bad faith claim is well-known and oft repeated:

> The Oklahoma Supreme Court and this Court have made clear that an insurer does not subject itself to a claim of bad faith merely by disputing coverage. The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a legitimate dispute as to coverage or amount of the claim, and the insurer's position is reasonable and legitimate. So long as there is a legitimate basis for doing so, disputing coverage is not bad faith per se. We note, though, that a legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith. An insured may pursue a claim of bad faith even where the insurer has a legitimate defense to coverage. However, in order to pursue such a claim, the insured must present sufficient evidence reasonably tending to show bad faith.... In sum, in order to establish [a bad faith] claim, the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim.

*Timberlake Constr. Co. v. U.S. Fid. and Guar. Co.*, 71 F.3d 335, 343-44 (10th Cir. 1995) (internal citations and quotations omitted). "Whether an insurer's actions reasonably give rise to an inference of bad faith must be determined in light of all facts known or knowable concerning the claim at the time plaintiff requested the company to perform its contractual obligation." *Oulds v. Principal Mut. Life Ins.*

*Co.*, 6 F.3d 1431, 1439 (10th Cir. 1993) (citing *Conti v. Republic Underwriters Ins. Co.*, 1989 OK 128, ¶ 20, 782 P.2d 1357, 1362).

Defendant contends there is no evidence supporting Plaintiff's bad faith claim because its conduct was reasonable under the circumstances and there was a legitimate dispute regarding whether the damage to Plaintiff's home was caused by an earthquake. As noted *supra*, it cites evidence that it believes supports its assertion that it acted in good faith, such as checking with USGS to see if there had been a severe earthquake near Plaintiff's home; contacting Plaintiff and sending an engineer out to inspect her home; explaining that it would be sending a Reservation of Rights letter because there was a question as to whether Plaintiff had a covered claim; hiring a registered professional engineer (Swain) to inspect the damages, and upon receiving Swain's findings, promptly informing Plaintiff of the results and its denial of coverage.

Defendant also asserts that, under the undisputed facts, there can be no question as to whether it had a justifiable reason for withholding payment under the policy. It cites to evidence that it retained Swain to inspect Plaintiff's house, who determined the cause of loss was differential foundation movement due to soil consolidation and not an earthquake. According to Defendant, it justifiably concluded that the cause of loss was an excluded event rather than a covered one.

However, Plaintiff has also provided evidence, including testimony from Swain, which reflects that Swain did not inspect the stem wall underneath the home, and despite concluding that extra moisture in the soil's composition caused the damage to Plaintiff's home, he (1) did not measure the moisture of the soil, (2) did not see any evidence of "ponding" around Plaintiff's home, (3) did not take a soil sample from beneath the home, and (4) did not inspect whether or not there was rainfall in the area. Plaintiff also points to evidence indicating that, despite his findings, Swain did not look into how the home was built, failed to investigate the home for exterior cracks, and failed to consider the effects of other earthquakes on the foundation and supporting soil.

Whether these facts, which are viewed in Plaintiff's favor (as well as all reasonable inferences) are sufficient to ultimately establish a claim for bad faith is not for the Court to decide, as it does not weigh the evidence at the summary judgment stage. Rather, the Court finds that credible evidence exists on both sides of the parties' dispute and such evidence should be weighed by a jury to determine whether Defendant breached its duty to Plaintiff. Accordingly, Defendant is not entitled to summary judgment on this claim.

Lastly, Defendant moves for summary judgment on Plaintiff's prayer for punitive damages. Pursuant to OKLA. STAT. TIT. 23, § 9.1, punitive damages may be available in a bad faith suit where the insurer has either (1) recklessly disregarded

its duty to deal fairly and act in good faith with its insured; (2) intentionally and with malice breached its duty to deal fairly and act in good faith with its insured; or (3) intentionally and with malice breached its duty to deal fairly and act in good faith with its insured, and the Court finds that, beyond a reasonable doubt, the insurer acted intentionally and with malice and engaged in life-threatening conduct. *Id*. Based on its findings above, the Court finds that whether such conduct constitutes any of the aforementioned categories of conduct warranting the imposition of punitive damages cannot be determined as a matter of law based on the instant summary judgment record. The record before the Court does not sway the Court in either direction as to whether the issue of punitive damages will be presented to the jury; hence, any ruling on the issue of punitive damages is premature.

## CONCLUSION

Defendant's Motion for Summary Judgment [Doc. No. 32] is **DENIED** as set forth herein.

**IT IS SO ORDERED** this 30th day of March 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE